THE STATE OF OHIO, APPELLEE, *v.* MAPES, APPELLANT.

[Cite as State *v.* Mapes (1985), 19 Ohio St. 3d 108.]

(No. 84-1885—Decided August 9, 1985.)

*John T. Corrigan,* prosecuting attorney, and *Timothy J. McGinty,* for appellee.

*Paul F. Markstrom* and *Daniel Gaul,* for appellant.

WRIGHT, J.

I

In his first proposition of law, appellant argues that the *non vult* plea is equivalent to a no contest plea and, under Crim. R. 11(B)(2) and Evid. R. 410, the New Jersey conviction entered upon a *non vult* plea is inadmissible to prove a prior murder specification under R.C. 2929.04(A)(5). Crim. R. 11 states in part:

"(B) Effect of guilty or no contest pleas. With reference to the offense or offenses to which the plea is entered:

"* * *

"(2) The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."

Evid. R. 410 states in part:

"Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of no contest, or the equivalent plea from

another jurisdiction, * * * is not admissible in any civil or criminal proceeding against the person who made the plea or offer. * * *.''

R.C. 2929.04 provides, in part:

"(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment * * * and proved beyond a reasonable doubt:

''* * *

"(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, * * *.''

Appellant was convicted of murder by a New Jersey court. An essential element of this crime was the purposeful killing of another. Two investigating officers from New Jersey testified at a proceeding conducted by the trial judge that appellant was convicted of the prior murder. Under New Jersey law, appellant's *non vult* plea to the murder indictment had the effect of insuring that appellant would not receive the death penalty. This *non vult* plea was made pursuant to a statute, the purpose of which was "the humane end that a guilty defendant need not run the gauntlet of a trial on capital punishment * * *." *State* v. *Forcella* (1968), 52 N.J. 263, 279, 245 A. 2d 181, 189. Thus we find that the admission of the prior conviction did not violate Crim. R. 11(B)(2) or Evid. R. 410.

Crim. R. 11(B)(2) and Evid. R. 410 prohibit only the admission of a no contest plea. These rules do not prohibit the admission of a conviction entered upon that plea when such conviction is made relevant by statute. The trial court was correct in admitting the evidence of the prior conviction as it was not equivalent to the admission of the no contest plea and it was not introduced by the prosecution for any purpose other than establishing the specification. The purpose of Evid. R. 410 as it relates to criminal trials is to encourage and protect certain statements made in connection with plea bargaining and to protect the traditional characteristic of the no contest plea which is avoiding the admission of guilt that is inherent in pleas of guilty. See 1 Weissenberger, Ohio Evidence (1985) 55, Section 410.1 and Advisory Committee Notes to Fed. R. Evid. 410. These purposes are not disserved by the admission of a conviction entered upon a no contest plea.

The issue of the applicability of Evid. R. 410 and Crim. R. 11(B)(2) aside, we note that the United States Supreme Court has authorized admission of prior convictions and pleas of no contest in death penalty cases, *Gregg* v. *Georgia* (1976), 428 U.S. 153,[1] and the majority rule that convic-

---

[1] The court in *Gregg* v. *Georgia* examined the Georgia death penalty statutes. Georgia Code Ann. Section 27-2503 (Supp. 1975), as quoted in that case provides, in part: " '[T]he judge [or jury] shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, * * *.'' The court held that the Georgia death penalty statutes were constitutional.

tions entered on pleas of no contest are admissible to establish enhanced penalties. See Annotation (1963), 89 A.L.R. 2d 540, 610. Thus, we hold that Crim. R. 11(B)(2) and Evid. R. 410 do not preclude admission of a conviction entered upon a no contest plea to prove a prior murder specification under R.C. 2929.04(A)(5). Accordingly, this argument is without merit.

## II

Appellant argues in his second proposition of law that the jury's verdict finding him guilty of the charges of aggravated murder during the course of a burglary and robbery in Counts One and Two but not guilty of the specifications based on the same conduct under each count was inconsistent and requires reversal.

The two aggravated-murder counts read as follows:

Count One: "[T]he above named Defendant(s) * * * unlawfully and purposefully caused the death of another, to-wit: John Allen, while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit an Aggravated Robbery."

Count Two: "[T]he above named Defendant(s) * * * unlawfully and purposely caused the death of another, to-wit: John Allen, while committing or attempting to commit or while fleeing immediately after committing or attempting to commit an Aggravated Burglary."

On each count of aggravated murder, appellant was found not guilty of these two specifications:

"The Grand Jurors further find and specify that the offense presented above was committed while the offender was committing or attempting to commit or fleeing immediately after committing or attempting to commit Aggravated Robbery and either the offender was the principal offender in the commission of the Aggravated Murder, or if not the principal offender, committed the Aggravated Murder with prior calculation and design; and/or

"The Grand Jurors further find and specify that the offense presented above was committed while the offender was committing or attempting to commit or fleeing immediately after committing or attempting to commit Aggravated Burglary, and either the offender was the principal offender in the commission of the Aggravated Murder, or if not the principal offender, committed the Aggravated Murder with prior calculation and design; * * *."

Appellant argues that the verdicts are inconsistent because they seem to say appellant purposefully caused the death of John Allen during the course of an aggravated robbery and an aggravated burglary while at the same time saying he was not guilty of such offenses.

Initially, we note that the finding of guilt on the third specification involving a prior conviction is sufficient to warrant the death penalty regardless of the findings on specifications one and two. Additionally, we note that a close reading of the language in the principal charge and the

two specifications reveals that there is not necessarily an inconsistency in the guilty verdict of aggravated murder under R.C. 2903.01(B) and the jury's finding of not guilty on the two specifications. An individual can be convicted of aggravated felony murder as an accomplice absent a finding that either the individual was the "principal offender" or that he committed the murder with "prior calculation and design" as those terms were used in the first two specifications. Thus, a person would be guilty of murder but would not be guilty of the aggravating specification set out in R.C. 2929.04(A)(7). Therefore, appellant's argument that there is an inherent inconsistency in the results reached by the jury must be rejected. We would also point out that this issue is also resolved by our decision in *State* v. *Perryman* (1976), 49 Ohio St. 2d 14 [3 O.O.3d 8], vacated on other grounds (1978), 438 U.S. 911.

*State* v. *Perryman* presents precisely the situation in the instant case. In *Perryman*, the jury found the accused guilty of aggravated murder and aggravated robbery, but found the accused not guilty of a specification involving aggravated robbery. The court held in paragraph three of the syllabus that:

"Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid."

In explaining its result, the court in *Perryman* stated at 26:

"* * * The sentence was not based on an alleged inconsistency. The guilty verdict for count one reflects the jury's determination that appellant was guilty of the felony-murder. The determinations rendered as to the respective specifications can not change that finding of guilty. Furthermore, as indicated in R.C. 2929.03(A), one may be convicted of aggravated murder, the principal charge, without a specification. Thus, the conviction of aggravated murder is not dependent upon findings for the specifications thereto. Specifications are considered after, and in addition to, the finding of guilt on the principal charge. If more than one specification is charged, a finding of guilty on only one such specification is all that is required in order for the court to render the death sentence."

We hold that the guilty verdicts on the two counts of aggravated murder are not rendered invalid by the jury's finding of not guilty on the two specifications.[2]

### III

In his third proposition of law appellant argues that the United States Supreme Court mandate in *Enmund* v. *Florida* (1982), 458 U.S. 782, is

---

[2] Appellant's argument that the trial court committed error by instructing the jury that, in deciding the second issue of each specification, it must decide whether appellant "purposely" committed aggravated murder is likewise rejected. R.C. 2903.01 provides that purposefulness is an element of aggravated murder. Therefore, the charge was not incorrect.

violated when a verdict is returned without an indication of whether or not an accused is found guilty as an aider and abettor when the jury has been instructed on aider-and-abettor principles and that the permitted use of such a procedure renders the Ohio death penalty statutes unconstitutional.

In *Enmund* v. *Florida* the court found that the evidence supported no more than an inference that the petitioner in that case was the driver of a car that was used to escape a robbery that involved two murders. Thus, the petitioner clearly did not kill the victim, was not carrying a gun, and was not even present at the murders. The Supreme Court stated that an accused's culpability must be examined individually and that the death penalty may not be imposed on one "who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Id.* at 797. More specifically, the court variously described this evaluation of an accused's culpability as an examination of his "intentions, expectations, and actions," *id.* at 800, "of whether * * * [he] intended or contemplated that life would be taken," *id.* at 801, and whether he had an "intention or purpose that life will be taken. [*Id.* at 799.]" The court's reasoning was that the two social purposes of the death penalty — retribution and deterrence of capital crimes — will not be served if one is sentenced to death whose culpability does not meet the above standard.

Appellant's culpability meets the standard enunciated in *Enmund*. Unlike *Enmund*, the evidence viewed most favorably to appellant places him at the killing with gun in hand and all the evidence presented supports a finding that appellant was the triggerman. Further, unlike *Enmund*, the jury in the instant case found that appellant "unlawfully and purposely caused the death" of Allen. The jury's finding that appellant "unlawfully and purposely caused the death" of Allen satisfies *Enmund* v. *Florida* because that degree of culpability falls squarely within the standards quoted above. Therefore, the evidence and the jury's verdict are sufficient to withstand the *Enmund* test.

Appellant's argument that Ohio's death penalty statute does not satisfy *Enmund* also lacks merit. R.C. 2903.01(D) provides that, "[n]o person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. * * *" Thus, an accused cannot be found guilty of aggravated murder unless he is found to have intentionally caused the death of another. This intent standard falls squarely within the requirements of *Enmund*. Therefore, the Ohio death penalty statutes satisfy *Enmund* v. *Florida* because, for a conviction of aggravated murder, R.C. 2903.01(D) requires a finding that the accused intentionally caused the death of another.

IV

In his fourth proposition of law, appellant urges this court to adopt a rule requiring the "death-qualification" of jurors independent and separate from one another. Appellant argues that examining the jurors while gathered as a group tends to predispose the jurors as to the

accused's guilt and condition the jurors towards rendering the death penalty.

Independent questioning is not required by Ohio's death penalty statutes, and the United States Supreme Court has not ruled that it is required by the United States Constitution. In fact, many other jurisdictions have held that questioning prospective jurors while gathered as a group is permissible in capital cases. See, *e.g., State* v. *Kirkpatrick* (La. 1983), 443 So. 2d 546; *Lexington Herald-Leader Co., Inc.* v. *Meigs* (Ky. 1983), 660 S.W. 2d 658; *Irvin* v. *State* (Okla. Crim. App. 1980), 617 P. 2d 588. The determination of whether a *voir dire* in a capital case should be conducted in sequestration is a matter of discretion within the province of the trial judge. *State* v. *Gall* (1980), 65 Ohio App. 2d 57. The trial court's determination will not be reversed absent a showing of abuse of discretion. See *State* v. *Kirkpatrick, supra.* See, also, *Rosales-Lopez* v. *United States* (1981), 451 U.S. 182; *United States* v. *Gerald* (C.A. 5, 1980), 624 F. 2d 1291, rehearing denied (1980), 629 F. 2d 1350, certiorari denied (1981), 450 U.S. 920. Appellant has demonstrated no abuse of discretion or prejudice. Accordingly, this proposition of law is rejected.

## V

In his fifth proposition of law, appellant argues that he was denied his Fifth Amendment right to remain silent by the prosecutor's comment that appellant's statement during the sentencing phase was not made under oath.

Appellant did not testify during the guilt phase of trial, but gave an unsworn statement during the sentencing phase. Pursuant to R.C. 2929.03(D)(1), the prosecutor was not permitted to cross-examine on the unsworn statement. During the prosecutor's final argument, the following comments were made:

"You are supposed to look at the evidence hard, coldly, and say, is there mitigation, and does the defendant, he had the burden of going forward, he said to you, I chose not to take the oath.

"By his taking the stand like he did, and by him not taking an oath, this is what he is telling you. Number one, I am not going to subject myself to any response whatsoever. From that testimony —

"MR. CARLIN: Objection, your Honor.

"THE COURT: Overruled.

"MR. NUGENT: It means nothing.

"He says to you that he chooses not to be the same as you and take the oath that you took and every other witness took. He is the only person that came before you out of over 30 witnesses that didn't take the oath.

"And what should that mean to you? It should show you the kind of person that he is, that he doesn't want someone to question him about, well, if you say that you weren't the trigger man, let's get a little information about that. Let the prosecutor ask you a couple of questions."

Appellant argues that these comments violated his right to remain silent. Comments similar to these were held permissible in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164. In *State* v. *Jenkins,* this court stated at 217 that the prohibition of *Griffin* v. *California* (1965), 380 U.S. 609, against prosecutorial comment on a defendant's failure to testify does not extend to an unsworn statement during the sentencing phase. If a defendant chooses to make an unsworn oral statement to the jury, the prosecution should be allowed to argue that the defendant's statement has less credibility because it is not given under oath. The jury must determine the weight attributed to the evidence presented, including defendant's unsworn oral statement. Therefore, the state should be able to dispute the weight of that statement without violating defendant's Fifth Amendment rights. This proposition of law is rejected.

## VI

In his final proposition of law, appellant argues that the provisions of R.C. 2929.03(C)(2)(b) that require the same jury at the guilt and sentencing phases violate the impartial jury, effective assistance of counsel, equal protection and due process provisions of the Ohio and United States Constitutions.

R.C. 2945.25(C) permits challenge for cause in a capital case if a venireman "unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case." This statute finds its origin in *Witherspoon* v. *Illinois* (1968), 391 U.S. 510, wherein the Supreme Court stated that prospective jurors may be excluded for cause when it is unmistakably clear that they will automatically vote against the death penalty without regard to the evidence or that their attitudes toward the death penalty will prevent them from making an impartial decision. Appellant argues that the process of "death-qualifying" jurors that sit for the guilt phase of a capital trial violates the rights of equal protection and due process because such jurors are not representative of a fair cross-section of the community and are conviction prone.

This argument was addressed in *State* v. *Jenkins, supra,* in which we noted that the United States Supreme Court has never required separate juries for the guilt and penalty phases of a capital trial.[3] In *Jenkins,* this court relied on *Keeten* v. *Garrison* (C.A. 4, 1984), 742 F. 2d 129[4]; *Adams* v.

---

[3] The Supreme Court in *Witherspoon* v. *Illinois* (1968), 391 U.S. 510, at 517-518, stated:
"* * * We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a *per se* constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was."

[4] "Although the right to a jury trial includes the right to a jury venire drawn from a representative cross-section of the community, it does not include the right to be tried by

*Texas* (1980), 448 U.S. 38[5]; and *Smith* v. *Balkcom* (C.A. 5, 1981), 660 F. 2d 573, certiorari denied (1982), 459 U.S. 882, in holding at 188 that "death-qualify[ing] a jury prior to the guilt phase of a bifurcated capital prosecution does not deny a capital defendant a trial by an impartial jury." This holding controls this issue as raised in this case.

Appellant also argues that the use of the same jury at the guilt and penalty phases of his trial violated his right to trial by a fair and impartial jury and his right of effective assistance of counsel. Appellant argues that the jury did not fairly and impartially view him during the penalty phase because it had convicted him during the guilt phase and that appellant's counsel was not effective during the penalty phase for the same reason. These arguments were also rejected in *State* v. *Jenkins* where we stated:

"Appellant also submits that since the same jury which convicted him also sentenced him, he was denied a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, as well as Sections 10 and 16, Article I of the Ohio Constitution. Appellant illustrates this contention by arguing that if defense counsel pursues a defense at the guilt phase of a capital trial which affects defendant's credibility, then his credibility is diminished at the sentencing stage. Suffice it to say that although the Supreme Court has endorsed bifurcated proceedings in death penalty cases, see *Zant* v. *Stephens*, * * * [(1983), ____ U.S. ____, 77 L.Ed.2d 235] at 248, the court has yet to even remotely suggest that the Constitution requires a new jury be selected for the sentencing phase. Accordingly, we are unable to accept appellant's contention." *Id.* at 173-174, fn. 11.

This proposition of law is rejected.

## VII

We now undertake the task of independently weighing the aggravating circumstances surrounding the murder of John Allen against the factors appellant has presented which mitigate against the imposition of the death penalty. R.C. 2929.05(A) mandates this weighing process and states in pertinent part:

"* * * [T]he supreme court shall * * * review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case * * *."

R.C. 2929.05(A) provides further:

"* * * [T]he supreme court shall affirm a sentence of death only if the

jurors who are unable or unwilling to follow the law and the instructions of the trial judge in a capital case." *Keeten, supra,* at 133.

[5] "The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court." *Adams* at 45.

118

* * * court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case * * *."

In the instant case, appellant was found guilty of the aggravating circumstance of willfully killing one John Clark in New Jersey in 1972.[6] During the sentencing phase of the trial, appellant offered an unsworn oral statement claiming that he was not the triggerman in that prior New Jersey murder. He also testified that he had offered to plead guilty before trial in the instant case in exchange for life imprisonment without parole. Triggerman or not, the court in the previous case found that appellant "willfully, feloniously and * * * [with] malice aforethought" murdered John Clark. Thus, that conviction satisfies R.C. 2929.04(A)(5). We place little weight on appellant's offer to plead guilty in the instant case. There is no provision in Ohio law for life imprisonment without possibility of parole. Thus, assuming appellant's offer was accepted — a guilty plea in exchange for a possibility of parole — appellant would eventually be eligible for parole. Further, appellant's offer to plead guilty in no way excuses his culpability in two murders. After careful consideration of these mitigating factors at the time the life of John Allen was taken, we can come to but one conclusion: the mitigating factors do not outweigh the aggravating circumstances.

## VIII

Our final determination must be whether the death sentence is appropriate in this case. R.C. 2929.05(A) provides in pertinent part:

"* * * [T]he supreme court shall * * * determine * * * whether the sentence of death is appropriate. In determining whether the sentence of death is appropriate, the * * * supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. * * *"

R.C. 2929.05(A) continues:

"* * * [T]he supreme court shall affirm a sentence of death only if * * * [it] is persuaded from the record * * * that the sentence of death is the appropriate sentence in the case."

Appellant has been twice convicted of purposely causing the death of another. Capital punishment in this case can not be viewed as excessive when compared to its imposition in State v. Jenkins, supra, for murder coupled with armed robbery, or in State v. Maurer (1984), 15 Ohio St. 3d 239, for murder coupled with kidnapping, or with State v. Rogers (1985), 17 Ohio St. 3d 174, for kidnapping, rape and murder. A review of these cases and the other cases in Ohio where the death penalty has been imposed has led the court to the conclusion that a sentence of capital punish-

---

[6] Appellant received a sentence of eight to ten years' imprisonment for this conviction.

ment in the instant case is neither excessive nor disproportionate to the penalties imposed in similar cases. Therefore, we affirm the finding of the court of appeals that the death sentence is appropriate in the case.

## IX

In conclusion, we first find that there is no merit to any of the specific issues raised by appellant concerning the proceedings below. Second, we find that the aggravating circumstances of a prior conviction of purposeful killing outweighs any and all of the mitigating factors presented by appellant. Third, we find the sentence of death to be appropriate in this case, as it is neither excessive nor disproportionate to the penalty imposed in similar cases. Thus, in accordance with R.C. 2929.05(A), we affirm the conviction and sentence of death in this case.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DAHLING, LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

CELEBREZZE, C.J., concurs and concurs separately.

DAHLING, J., of the Eleventh Appellate District, sitting for SWEENEY, J.

CELEBREZZE, C.J., concurring. I join my brethren in affirming both the conviction and sentence in this cause. However, I fear that Part V of the majority opinion could be misread to imply that an accused waives his Fifth Amendment[7] protection against self-incrimination by electing to exercise his statutory option of making an unsworn statement to the jury during the penalty phase of a capital proceeding.

"In *Griffin* v. *California* (1965), 380 U.S. 609 [32 O.O.2d 437], the Supreme Court ruled as prejudicial direct comments upon the accused's failure to take the stand. In so holding, the court recognized that to allow such comments would penalize an accused for exercising his constitutional right against self-incrimination." *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 162.

Similarly, paragraph one of the syllabus in *State* v. *Lynn* (1966), 5 Ohio St. 2d 106 [34 O.O.2d 226], provides:

"Comment by the trial court or by the prosecutor upon the failure of an accused to testify in a criminal proceeding against him violates the self-incrimination clause of the Fifth Amendment made applicable to the states

---

[7] See the Fifth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution.

by the Fourteenth Amendment. (United States Supreme Court in *Griffin* v. *California,* 14 L. Ed. 2d 106.)" See, also, *Lockett* v. *Ohio* (1978), 438 U.S. 586 [9 O.O.3d 26]; *Johnson* v. *United States* (1943), 318 U.S. 189.

The Fifth Amendment protection affording an accused the right to remain silent extends to every "criminal proceeding." *Lynn, supra.* This safeguard undoubtedly embraces the penalty phase of capital cases where defendants compete with the prosecutors for their very lives.

In exercise of his Fifth Amendment right to remain silent, appellant chose not to testify during either the guilt or penalty phases of his capital trial. However, appellant exercised his statutory right[8] to make an unsworn statement to the jury during the sentencing phase only.[9]

Pursuant to the express terms of the statute the prosecutor was forbidden to question appellant. The trial court properly advised the jury of appellant's rights in this respect and explained that the state was statutorily precluded from cross-examination.

In this regard it must be recognized that rather than modifying or creating an exception to the constitutional prohibition announced in *Griffin,* the Ohio Legislature merely provided a means whereby an accused could decide to make an unsworn statement in mitigation, not subject to cross-examination, without waiving his constitutional protection against self-incrimination and without incurring risk of a prosecutor arguing that his election to make such a statement is somehow evidence of guilt.

The applicability of our holding in *Lynn* to such remarks made during a capital sentencing hearing was recently considered in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164. During closing argument of the penalty phase of Jenkins' trial, the prosecutor stated:

"Let me make a note of something else while I talk about that statement [of Jenkins]. You notice, ladies and gentlemen, that throughout this trial, this part, as well as the previous part, their witnesses came in and the witness took the oath—."

At this point, "[t]he defense promptly objected and the objection was sustained. A contemporaneous motion for mistrial was denied. The court warned the prosecutor to abandon the argument and then instructed the jury to disregard the prosecutor's comments." *Id.* at 216.

---

[8] R.C. 2929.03(D)(1) provides in pertinent part:

"* * * The defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of any other factors in mitigation of the imposition of the sentence of death. If the offender chooses to make a statement, he is subject to cross-examination only if he consents to make the statement under oath or affirmation."

[9] One primary purpose of the unsworn statement is to allow the defendant the opportunity to present a personal account so that the jury may better determine if the aggravating evidence of the case is in any way mitigated when viewed through the subjective eyes of the capital defendant. The weight and credibility to be assigned such unsworn remarks are, of course, matters for the jury to determine.

On appeal Jenkins similarly claimed that the prosecutor's comment constituted a constitutional violation of the rule set forth in *Griffin* v. *California, supra,* as expressly recognized by this court in *State* v. *Lynn, supra.* This court rejected Jenkins' contentions by concluding that the prosecutor's utterances did not constitute prejudicial reversible error because the cases relied on were inapposite.

The distinction we made between *Jenkins* and the earlier cases was based on the content of the statements within the circumstances presented. Neither our decision in *Jenkins* nor our holding in the case *sub judice* should be read as establishing a broad rule that the Fifth Amendment is inapplicable once an accused chooses to address the jury in the sentencing phase. Simply put, *Jenkins* does not create a *per se* blanket exception whereby a prosecutor has unlimited privilege to comment unfavorably on a capital defendant's choice to exercise a constitutional right. To the contrary, the purpose and protection of *Griffin* and *Lynn* are just as vital, if not more so, during the sentencing portion of a capital trial because a life is at stake. "Whether guilty or not, a defendant is entitled, as is every person charged with crime, to a fair trial." *State* v. *Petro* (1947), 148 Ohio St. 473 [36 O.O. 152], paragraph twelve of the syllabus.

In considering errors based on isolated remarks or testimony, a reviewing court must view the claim against the entire record. The Supreme Court of the United States has reminded us that:

"In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal trial into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution." *Johnson* v. *United States* (1943), 318 U.S. 189, 202 (Frankfurter, J., concurring).

As noted previously, central to our conclusion in *Jenkins* was a full consideration of the circumstances. The determination of whether prosecutorial remarks violate constitutional rights requires more than a mere color-matching of cases. It requires a careful evaluation of all the circumstances surrounding the statements. Cf. *Jenkins, supra,* at 232.

Such an evaluation reveals that in this case, as in *Jenkins,* the accused "* * * did not choose to remain silent. He exercised his option to speak." *Id.* at 216. Additionally, the prosecutor's comments concerning appellant's credibility "* * * said nothing more than what the jury already knew to be true, namely, that all other * * * witnesses testified under oath and that appellant did not." *Id.* at 217. The instant record also reflects that while the prosecutor did not cross-examine appellant, the defense was granted great leeway in the presentation of evidence: the court permitted defense counsel to develop appellant's unsworn statement by questioning his client before the jury.

Lastly, the court correctly instructed the jury on several occasions relative to the accused's statutory right to make an unsworn statement.

The court also instructed the jurors that counsels' arguments did not constitute evidence. The court's charge following closing arguments advised the jurors that they should consider all proper evidence including the unsworn statement of the appellant. In fact, during the course of their deliberations, the jurors requested and were read appellant's entire unsworn mitigation statement without comment, to weigh and consider.

This is undeniably a close question presented in the midst of a death penalty review which is always the most difficult of all appellate tasks. In a slightly different setting, offending remarks similar to those made in this proceeding could result in a different resolution.

However, under *these circumstances,* "* * * the prosecutor's remarks, when reviewed in context, cannot be said to undermine the fairness of the trial and contribute to a miscarriage of justice." *United States* v. *Young* (1985), 470 U.S.___, 84 L. Ed. 2d 1, 15. Accordingly, I concur with today's rejection of appellant's contention.