OPINION
This matter presents a timely appeal from a jury verdict and judgment rendered upon such verdict by the Mahoning County Common Pleas Court, finding defendant-appellant, William Paige, guilty of two counts of aggravated murder, in violation of R.C. 2903.01(B), along with three specifications on each count; aggravated burglary, in violation of R.C.2911.11(A)(3)(B), along with a firearm specification; and, two counts of aggravated robbery, in violation R.C. 2911.01(A)(1)(B), along with a firearm specification on each count.
On the evening of March 18, 1996, Thomas McConnell, Jr. spent several hours visiting and enjoying dinner with his parents, Thomas and Mary McConnell ("victims"). (Tr. 40-41). After dinner, Thomas, Jr. and his family returned home for the evening. (Tr. 41).
Jane Patterson ("Patterson"), who is the sister of Thomas McConnell, Sr., occupied the residence next to the victims. (Tr. 53). She testified that on March 18, 1996, she saw her brother and noticed his car in his driveway. (Tr. 55). Since a window in her house faced her brother's home, Patterson witnessed her nephew's departure from his parent's house around 7:00 p.m. (Tr. 55-56). Shortly thereafter, at approximately 7:30 p.m., Patterson stated that she heard and saw a noisy car come down the street and proceed to pull into her brother's driveway. (Tr. 57, 66). A man emerged from the driver's side of the vehicle and approached the McConnell's house. (Tr. 57).
Patterson opened her door to get a closer look at the man, and noticed that he had something in his hand or was doing something with the door. (Tr. 57-58). Upon witnessing this, Patterson went back inside and telephoned her brother to tell him that someone was attempting to get into the house. (Tr. 58). Soon she saw the porch-light come on and heard her brother and the man talking. (Tr. 58). Approximately fifteen minutes later, Patterson heard the man's car start and exit the driveway. (Tr. 58). Patterson estimated that about fifteen to twenty minutes later the car returned, the man exited the vehicle and walked right into the house. (Tr. 59-61). Roughly ten minutes later, Patterson observed the man get into his car and leave her brother's residence. (Tr. 61).
Patterson described the man as wearing a dark jacket with yellow across the top and driving a noisy burgundy or maroon car. (Tr. 60, 64).
That same night, the victims' daughter called Thomas, Jr., concerned that she had not been able to contact their parents by telephone that evening. (Tr. 42). Thomas, Jr. attempted to telephone the victims about fifteen to twenty times, but was still unable to reach them. (Tr. 42). When he returned to the victims' residence at approximately 11:00 p.m. that night, Thomas, Jr. found the porch light on and the door opened, which was unusual because the victims always kept their doors locked. (Tr. 43).
Upon further investigation, Thomas, Jr. found his parents in a back bedroom, both had received fatal gunshot wounds. (Tr. 44, 482-486).
Though the victims' house showed no signs of forced entry, drawers were pulled out, the contents of Mary McConnell's purse was emptied, and several of the victims' belongings were missing. (Tr. 43-44, 48, 389-390).
Appellant was apprehended and indicted by the Mahoning County Grand Jury on May 3, 1996 for two counts of aggravated murder, in violation of R.C. 2903.01(A), and two counts of aggravated murder, in violation of R.C. 2903.01(B), along with death specifications and firearm specifications attached to each violation. In addition, an indictment was also issued against appellant for aggravated burglary and aggravated robbery, both with firearm specifications.
The case proceeded to trial on March 4, 1998. On March 13, 1998, the jury returned a verdict of not guilty on the aggravated murder charges alleging prior calculation and design under R.C. 2903.01(A). However, the jury returned guilty verdicts on the two counts of felony murder as specified in R.C. 2903.01(B), aggravated burglary, aggravated robbery, and the firearm specifications accompanying all the offenses.
With regard to the death specifications accompanying each count, appellant was found guilty of committing the offense for the purpose of escaping detection or punishment. The jury also found appellant guilty of engaging in a course of conduct involving the purposeful killing of two or more persons, but returned a not guilty verdict on the specification charging that the murder occurred while appellant was committing, attempting to commit or fleeing immediately after committing aggravated robbery or aggravated burglary and that appellant was a principal offender in the commission of the aggravated murders.
On March 25, 1998, the trial court sentenced appellant to life imprisonment with parole eligibility after thirty years on each count of aggravated murder, an indefinite term of not less than ten nor more than twenty-five years on the counts of aggravated burglary and aggravated robbery, and three years actual incarceration on the firearm specifications.
Appellant sets forth two assignments of error on appeal.
Appellant's first assignment of error alleges:
 "APPELLANT PAIGE'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT AS WELL AS HIS RIGHTS UNDER THE OHIO CONSTITUTION ARTICLE I, SECTION 16 WERE VIOLATED WHEN THE TRIAL COURT ERRED IN ALLOWING APPELLANT TO BE SENTENCED FOLLOWING INCONSISTENT VERDICTS. (TRANSCRIPT VOL. III, AT 664; SENTENCING JUDGMENT ENTRY)."
In the instant matter, appellant was convicted of two counts of aggravated murder under R.C. 2903.01(B), which states:
 "No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape."
In addition to the jury's guilty verdict on the aforementioned counts of aggravated murder, each count carried with it three death specifications. Though appellant was found guilty on two of the accompanying specifications, the jury found him not guilty of the specification contained in R.C. 2929.04(A)(7), which states:
 "The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."
Appellant argues that the jury's guilty verdict on the two counts of aggravated murder in violation of R.C. 2903.01(B) are "internally inconsistent" with their finding of not guilty on the third specification on each count found in R.C. 2929.04(A)(7). Specifically, appellant submits that the jury's determination that he did not commit aggravated murder with prior calculation and design under R.C. 2903.01(A), coupled with the finding of not guilty on the felony murder specifications of R.C. 2929.04(A)(7), indicates that the jury also found appellant was not the principal offender and the killings did not occur in the course of a felony. Thus, appellant contends that he should be granted a new trial because such inconsistency deprived him of his constitutional right to due process of law guaranteed to him by the Fourteenth Amendment to the United States Constitution.
The Ohio Supreme Court examined these issues in State v. Mapes (1985),19 Ohio St.3d 108, wherein the defendant was also found guilty of felony murder under R.C. 2903.01(B) and not guilty of the accompanying specification under R.C. 2929.04(A)(7). The Court stated:
 "* * *, we note that a close reading of the language in the principal charge and the two specifications reveals that there is not necessarily an inconsistency in the guilty verdict of aggravated murder under R.C. 2903.01(B) and the jury's finding of not guilty on the two specifications. An individual can be convicted of aggravated felony murder as an accomplice absent a finding that either the individual was the `principal offender' or that he committed the murder with `prior calculation and design' as those terms were used in the first two specifications. Thus, a person would be guilty of murder but would not be guilty of the aggravating specification set out in R.C. 2929.04(A)(7). Therefore, appellant's argument that there is an inherent inconsistency in the results reached by the jury must be rejected. * * *." Mapes, supra at 112-113.
In addition, the Court, referring to its prior decision in State v.Perryman (1976), 49 Ohio St.2d 14, vacated on other grounds (1978),438 U.S. 911, stated:
 "`Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid.'" Mapes, supra at 113.
Thus, relying on the precedent established by the Ohio Supreme Court in the aforementioned decisions, appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT VIOLATED APPELLANT PAIGE'S FOURTEENTH AMENDMENT RIGHTS AS WELL AS HIS RIGHTS UNDER THE OHIO CONSTITUTION ARTICLE I, SECTION 16 BY ADMITTING TESTIMONY REGARDING OTHER ACTS ALLEGEDLY COMMITTED BY APPELLANT PAIGE WHICH TESTIMONY WAS INADMISSIBLE UNDER OHIO RULE OF EVIDENCE 404(B). (MOTION HEARING TRANSCRIPT 6/5/97 AT 67)."
The other acts evidence cited by appellant as inadmissible herein was elicited by appellee from four individuals who had prior encounters with appellant.
The first witness' testimony with whom appellant finds fault is Ralph Cruz ("Cruz"), the father-in-law of appellant's brother. (Tr. 88). Cruz testified that on March 13, 1996, his residence was burglarized and his seven shot .22 caliber revolver was stolen. (Tr. 91-94). Upon being presented with the murder weapon, Cruz was able to distinguish that the gun was identical to the one that had been stolen from him, but was unable to say if the weapon was the exact gun for which he was dispossessed. (Tr. 99-100, 104).
After questioning Mr. Cruz, appellee called Scott Pallo ("Pallo"), an employee of Clark gas station. (Tr. 155-156). Pallo explained that on March 19, 1996, sometime between 8:30 and 9:00 a.m., he was held up at gunpoint while working at the Clark gas station located on Raccoon Road in Austintown, Ohio. (Tr. 156). In addition, Pallo identified appellant as the perpetrator of the robbery, stating that he was dressed in a black and gold Steelers coat and drove a "maroonish" car. (Tr. 161-162). When presented with the murder weapon, Pallo testified that it looked like the gun which was pointed at him on the day of the robbery. (Tr. 158-159).
Next, appellee called Marcia Doverspike ("Doverspike") to the stand. Doverspike testified that she knew appellant through her niece, Gina, to whom he was married. (Tr. 190). Her testimony established that on March 10, 1996, appellant appeared at the front door of her residence, apparently to offer his condolences for the death of her father two or three months earlier. (Tr. 191, 199). Recalling the incident, Doverspike testified that appellant was wearing a black and gold Pittsburgh Steelers coat and drove a "maroon burgundy" Plymouth New Yorker with damage to the "front grill" and "front quarter panel." (Tr. 192, 195-196).
Lastly, appellee presented the testimony of Marilyn Karrenbauer ("Karrenbauer"). Karrenbauer stated that on March 19, 1996, she returned home on her lunch break to find a "burgundy color * * * car" blocking her driveway. (Tr. 204-205). As she approached the back door of her residence, Karrenbauer noticed the small window next to her back door was wide open. (Tr. 206). Alarmed that someone was in the house, Karrenbauer proceeded back to her vehicle. (Tr. 207). On her way, she inspected the car and took special notice of the license plate number, being H988560. (Tr. 207). After notifying the proper authorities of this incident and submitting the license plate number, Karrenbauer was asked to examine a vehicle taken into custody by the police. (Tr. 210, 214). The vehicle was identified by Karrenbauer as being the one she had seen in her driveway earlier that day and later determined to be registered to appellant. (Tr. 214-215).
In sum, the other acts testimony with which appellant takes issue was clearly intended by appellee to establish that appellant wore a black and gold Pittsburgh Steelers coat and drove a maroon/burgundy vehicle, thus, collaborating Patterson's testimony as to what she had witnessed occur at her brother's residence on the night of the murders.
Appellant moved the trial court to suppress the evidence of other acts. A hearing was held on June 5, 1997. At the hearing, the parties extensively argued their respective positions and the trial court concluded that the evidence in question was admissible as relating to the identity exception provided under Evid.R. 404(B) and existing Ohio case law. (Mot. Hrg. 66-67).
The Ohio Supreme Court dealt with the issue of admissibility of other acts evidence to establish identity in State v. Lowe (1994),69 Ohio St.3d 527. In Lowe, supra at 530-531, the Court stated:
 "* * * Identity is the least precise of the enumerated purposes of Evid.R. 404(B). * * * [courts] therefore must be careful when considering evidence as proof of identity to recognize the distinction between evidence which shows that a defendant is the type of person who might commit a particular crime and evidence which shows that a defendant is the person who committed a particular crime.
"Other acts can be evidence of identity in two types of situations. First are those situations where other acts `form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are `inextricably related to the alleged criminal act.' State v. Curry (1975), 43 Ohio St.2d 66, 73, * * *.
"Other acts may also prove identity by establishing a modus operandi
applicable to the crime with which a defendant is charged. `Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B).' State v. Jamison (1990),49 Ohio St.3d 182 , * * *. '"Other acts" may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense.' State v. Smith (1990),49 Ohio St.3d 137, 141, * * *. While we held in Jamison that `the other acts need not be the same as or similar to the crime charged,' Jamison, syllabus, the acts should show a modus operandi identifiable with the defendant. State v. Hutton (1990), 53 Ohio St.3d 36, 40, * * *."
In the most recent case decided by the Ohio Supreme Court on this issue, State v. Bey (1999), 85 Ohio St.3d 487, the Court reaffirmed their position in Lowe, stating:
 "Under Evid.R. 404(B), '[e]vidence of other crimes, wrongs, or acts is not admissible to prove' a defendant's criminal propensity. `Other acts' evidence is admissible, however, if '(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' * * * Identity can be proven by establishing a modus operandi applicable to the crime with which a defendant has been charged. But in order '[t]o be admissible to prove identity through a certain modus operandi, other acts evidence must be related to and share common features with the crime in question.' * * * For example, `evidence of "other acts" to prove * * * the identity of the perpetrator is admissible where two deaths occur under almost identical circumstances.'" (Additional citations omitted).
Appellant alleges that the trial court committed reversible error when it overruled his motion and admitted improper other acts evidence under the premise of Evid.R. 404(B). It is appellant's contention that such evidence was offered by appellee in an attempt to demonstrate that appellant had a propensity for crime, thus, misleading the jury to believe that he acted in conformity therewith in this case. As a result, appellant believes he is entitled to a new trial.
In reviewing a trial court's decision to admit or exclude evidence, an appellate court must limit its review to whether the trial court abused its discretion. State v. Scott (1999), Jefferson App. No. 97-JE-25, unreported, citing Bey, supra at 490. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. Based upon this standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court on evidentiary issues. State v. Jenkins (1984), 15 Ohio St.3d 164,222.
At the commencement of trial, the court instructed the jury regarding the other act evidence, as follows:
 "Evidence was received about the commission of acts other than the offenses which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in accordance with that character.
"If you find the evidence of other acts is true and that the defendant committed them, you may consider the evidence only for the purpose of deciding whether it proves the defendant's motive to commit the offense charged in this trial or the identity of the person who committed the offense in this trial. The evidence cannot be considered for any other purpose.
"It is for you, the jurors, in light of all the facts presented to you and from the witness stand, to evaluate such testimony and to determine the quality and worth or its lack of quality and worth." (Tr. 606-607).
When limiting instructions are given to a jury regarding other acts evidence absent evidence to the contrary, a reviewing court must presume that the jury followed these instructions. Bey, supra at 491.
Aside from the evidence with which appellant finds fault, appellee provided testimony from Arthur Tyrone Mitchell and Kevin Carver, with whom appellant was intricately familiar and from whom appellant bought drugs. (Tr. 107-110, 272-74). The two men, who resided together, each testified that appellant often wore a black and gold Pittsburgh Steelers coat and drove a burgundy Chrysler and that he was wearing the coat and driving that car when they had seen him earlier on the day the murders occurred. (Tr. 108-109, 110, 113-115, 272, 274, 277-278, 280). In addition, each man's testimony established appellant's connection with the weapon used to perpetrate the crime. (Tr. 111-112, 114, 275-76, 279). Further, Mitchell and Carver both testified that appellant had informed them that he had used the gun on the day of the murders and tried to sell them some of the items that he had taken from the McConnell's. (Tr. 115-117, 280-282).
Though appellant may wish to argue that the other acts evidence was, in lieu of Mitchell and Carver's testimony, unnecessary and thus, prejudicial, the Ohio Supreme Court has held that "need is irrelevant to an Evid.R. 404(B) objection." Bey, supra at 491.
The Ohio Supreme Court has continued to uphold the use of other acts in order to prove identity, stating:
 "'* * * "The law will not suffer itself to be handicapped by limiting means or methods of identification to physical characteristics. Where the identity of the defendant is the question in issue, any fact which tends to establish the identity has probative value and is none the less competent evidence because it establishes a collateral fact nor because proof of such fact may incidentally involve proof of the commission of another offense. If the fact tends to establish the identity of the accused, it is competent evidence, no matter what else it may prove * * *."'" State v. Jamison (1990), 49 Ohio St.3d 182, 185; citing Barnett v. State
(1922), 104 Ohio St. 298, 303.
Taken together, the facts and circumstances surrounding the admission of other acts evidence to prove identity did not amount to an abuse of discretion by the trial court. The trial court carefully considered the issues raised in appellant's motion to suppress and made a conscientious decision to allow the evidence. In addition, the trial court sought to vitiate any undue prejudice the evidence may have caused appellant by instructing the jury that the evidence was received only for the limited purpose of proving the motive to commit the offense or the identity of the person who committed the offense and could not be considered for any other purpose. (Tr. 606-607).
Accordingly, appellant's second assignment of error is found to be without merit.
The decision of the trial court is affirmed.
Donofrio, J, concurs. Vukovich, J., concurs.