OPINION
Defendant-appellant, Reginald Heller, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of abduction pursuant to a jury verdict.
Defendant's conviction arose out of events that occurred on January 1, 2001. At trial, contradictory evidence concerning details of these events was offered. The state's evidence portrayed defendant as the aggressor. By contrast, defendant contends he acted in self-defense during the violent episode at the home of his mother, Hattie Moorehead, where both defendant and his ex-wife, Mary Townsend, were injured by their fighting and by the knives each contended the other wielded.
According to the state's evidence, Townsend and defendant arrived at Moorehead's house after a New Year's Eve party. Defendant and she engaged in consensual sexual intercourse. Defendant became angry when Townsend refused to give him the money he requested, and he telephoned his girlfriend, Viola Anderson. Townsend became jealous. A struggle ensued, part of which involved knives and injuries. Although Townsend exited the house at one point, she lacked sufficient clothing and returned, only to continue fighting with defendant.
A nurse that attended to defendant's quadriplegic brother arrived at the house. While Moorehead answered the door, Townsend went downstairs, grabbed her coat, locked defendant's bedroom door, climbed out the window, and ran down the driveway into the street. Townsend attempted to seek assistance from the husband of the nurse that had come to the house. He, however, would not stop for Townsend. Defendant pursued Townsend down the street. After defendant caught Townsend, he pulled Townsend's coat and grabbed her blouse. Townsend let loose of both the coat and blouse. Leland Sauls, a passerby, stopped his car, picked up Townsend, and drove her to a friend's house.
According to defendant, when the nurse arrived at the house, she tended to his wounds. After defendant opened the door, he saw Townsend as she attempted to go to the car the nurse's husband drove. Townsend stood outside, wearing only a bra that was blood stained. Defendant went outside, and Townsend began to run. Defendant then saw Townsend enter a car that had stopped.
By indictment filed January 12, 2001, defendant was charged with one count of felonious assault in violation of R.C. 2903.11 and one count of kidnapping in violation of R.C. 2905.01. At the conclusion of the trial, the jury found defendant not guilty of felonious assault and the lesser included offense. The jury also found defendant not guilty of kidnapping, but guilty of the lesser included offense of abduction. The common pleas court sentenced defendant accordingly. Defendant timely appeals, assigning the following errors:
FIRST ASSIGNMENT OF ERROR:
 The trial court erred in upholding the guilty verdict of the lesser included offense of Abduction, which was not supported by sufficient evidence and against the manifest weight of the evidence.
SECOND ASSIGNMENT OF ERROR:
 The trial court erred in upholding the guilty verdict of the lesser included offense of Abduction, which was tainted by prosecutorial misconduct which occurred when the State commented on Appellant's failure to testify during the State's voir dire, in violation of the Fifth Amendment of the United States Constitution.
In his first assignment of error, defendant contends his conviction for abduction is supported by insufficient evidence and is against the manifest weight of the evidence. To the extent defendant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 260, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"); Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
R.C. 2905.02(A), in defining the crime of abduction, specifies that "[n]o person, without privilege to do so, shall knowingly do any of the following: (1) By force or threat, remove another from the place where the other person is found; (2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear; (3) Hold another in a condition of involuntary servitude." In State v. Maurer (1984),15 Ohio St.3d 239, 270, certiorari denied (1985), 472 U.S. 1012, the Ohio Supreme Court noted that "[o]ne of the primary differences between kidnapping and abduction involves the offender's mental culpability. Kidnapping involves a purposeful removal or restraint * * * while abduction involves a knowing removal or restraint." (Emphasis sic.) R.C.2901.22(B) defines "knowingly" and states: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
At trial, Leland Sauls, a prosecution witness, testified that on the morning of January 1, 2001, he was driving on Cassady Avenue when he observed what he initially believed to be "kids." According to Sauls, it appeared as if one of the kids was attempting to throw another one in front of some cars. On closer approach, Sauls testified that "I saw a guy hitting a girl, and it looked like he was swinging at her. She had her arms up in defense around her face, and as she tried to get away, he pulled off her blouse. Then she came running toward the car, and she was covered in blood. So I let her in, and she was very frantic, saying that, `I can't believe he tried killing me. I just can't believe he tried killing me.'" (Tr. 117.) Sauls further testified that "I guess I blew the horn. That kind of got things settled down a little bit. He noticed me and got startled, and I guess as she was trying to pull away to get to the car, that's when he ripped her blouse off. I guess he tried to pull her back, but then he proceeded on as she got away." (Tr. 118.) At trial, Sauls positively identified defendant as the man he saw that day and he identified Mary Townsend from a picture as the woman that entered his car.
Sauls' testimony, construed in favor of the prosecution, permits any rational trier of fact to find the essential elements of abduction beyond a reasonable doubt. According to Sauls' testimony, defendant hit Townsend and restrained Townsend. When Townsend attempted to flee, defendant tore Townsend's blouse. Accordingly, the evidence supports defendant's conviction for abduction.
In addition, defendant's conviction is not against the manifest weight of the evidence. At trial, Sauls was a reluctant witness. Moreover, Sauls had a noticeable disinterest in the outcome of the case. By contrast, defendant, as the accused, did not. Moreover, at trial defendant admitted that he had been convicted of a "few" felonies in the past and had been returned to prison due to parole violations. The jury properly could have attributed less weight and credibility to defendant's testimony that disputed Sauls' testimony. See DeHass, supra, at 230, paragraph one of the syllabus. Although aspects of Sauls' testimony were impeached on cross-examination, Sauls' testimony was competent and credible, and permitted reasonable minds to find guilt beyond a reasonable doubt. Accordingly, under the circumstances of this case, the jury did not clearly lose its way and a manifest miscarriage of justice was not created. See Thompkins, supra, at 387. Accordingly, defendant's first assignment of error is overruled.
In his second assignment of error, defendant contends his conviction was tainted by prosecutorial misconduct when, during voir dire, the prosecutor commented on defendant's failure to testify.
In Griffin v. California (1965), 380 U.S. 609, 615, the United States Supreme Court held "* * * that the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." However, a Griffin error is not per se error requiring automatic reversal. See United States v. Hasting (1983), 461 U.S. 499, 508 ("Soon after Griffin, however, this Court decided Chapman v. California [(1967), 386 U.S. 18] which involved prosecutorial comment on the defendant's failure to testify in a trial that had been conducted in California before Griffin was decided. The question was whether a Griffin error was per se error requiring automatic reversal or whether the conviction could be affirmed if the reviewing court concluded that, on the whole record, the error was harmless beyond a reasonable doubt. In Chapman, this Court affirmatively rejected a per se rule").
Defendant failed to object to the prosecutor's remarks during voir dire. Absent objection, defendant's assignment of error is examined under a plain error standard. State v. Hill (2001), 92 Ohio St.3d 191 (applying plain error analysis in reviewing alleged constitutional error in the absence of objection in the trial court). Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
In State v. Barnes (2002), 94 Ohio St.3d 21, 27, the Ohio Supreme Court recently noted that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Citations omitted.) "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
In State v. Mapes (Oct. 25, 1984), Cuyahoga App. No. 47191, unreported, affirmed (1985), 19 Ohio St.3d 108, certiorari denied (1986), 476 U.S. 1178, the appellate court determined a prosecutor's comment during voir dire that the defendant might not testify was improper and violated the Fifth Amendment guarantee against self-incrimination under Griffin. See Mapes, supra ("* * * it was improper for the prosecutor to comment at voir dire on the fact defendant may not testify. Even though the prosecutor did not openly impeach appellant in this manner, he improperly planted the seeds for doubt in the jury's minds by any comment on the matter"). Here, at voir dire the prosecution's repeated inquiries of whether prospective jurors would like to hear both sides of a story suggested a juror could not fairly determine the case unless defendant testified. As such, the prosecutor improperly planted seeds of doubt by commenting on whether defendant might testify at trial. Under Mapes, the prosecutor's comments violated defendant's Fifth Amendment guarantee against self-incrimination. The issue under defendant's second assignment of error then resolves to whether defendant sustained the requisite prejudice in the prosecution's error.
Notwithstanding the prosecution's improper comments, the prosecution did not misstate the law during voir dire. Specifically, the prosecution stated that "You are here to make a decision based upon the information that you are given. And the judge will tell you, you can't speculate about what might have been said or why the defendant didn't testify. He may; he may not. That's the decision that [defense counsel] and the defendant will make as we go through the case. There's that possibility. And if you have any issues about that, it's important to know now. Because if it causes you concerns, like Ms. Washington indicated, if you're going to hold that against the defendant, that's not fair to him. And if you're going to say you can't make a decision if you don't hear from him, that's not fair to the State"). (Supp. Tr., 23.) While the technical correctness of the law stated to the potential jurors does not preclude the comment from being error, it is a factor in assessing the prejudice defendant sustained as a result of the remarks.
In addition, the prosecution's comments occurred during voir dire, not at closing arguments. The jury had not yet been impaneled, no evidence had been introduced and defendant had not yet been given an opportunity to testify at the proceedings. Moreover, unlike Mapes, where defendant did not testify during the guilt phase of the trial, and presented only unsworn testimony during the penalty phase, defendant in this case testified. To the extent defendant contends the prosecution's comments prejudiced him by impeaching his failure to testify, such an argument is unpersuasive. See Smith v. Flesher (1967), 12 Ohio St.2d 107, paragraph one of the syllabus ("In order to support reversal of a judgment, the record must show affirmatively not only that error intervened but that such error was to the prejudice of the party seeking such reversal. (Paragraph one of the syllabus of Ohio Life Insurance and Trust Co. v. Goodin, 10 Ohio St. 557, approved and followed)").
Also problematic is whether the prosecution's comments compelled defendant to provide evidence or testify when defendant had not planned to testify at trial. See Roberts v. United States (1980), 445 U.S. 552,559, fn. 6 ("The Court recognized * * * that this rule [that theFifth Amendment privilege against compelled self-incrimination is not self-executing] is subject to exception when some coercive factor prevents an individual from claiming the privilege or impairs his choice to remain silent").
The record provides little to support a claim that defendant's choice to remain silent was impaired by the prosecution's remarks during voir dire. While nothing in the pretrial or trial record suggested defendant intended to testify at his trial, that does not establish defendant's choice was impaired. Rather, after hearing the state's evidence, defendant, on the advice of counsel, just as plausibly may have decided to testify as a tactical decision in support of his defense. See Harrison v. United States (1968), 392 U.S. 219, 222 ("A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him"). Moreover, at trial defendant did not object to the prosecution's comments during voir dire. Similarly, defendant neither suggested he felt compelled to testify as a result of the prosecution's voir dire remarks, nor invoked the privilege against self-incrimination prior to his testimony. See Roberts, supra, at 559 ("The Fifth Amendment privilege against compelled self-incrimination is not self-executing").
Although the prosecution's comments at voir dire were improper, they fail to rise to the level of plain error. Defendant actually testified at the trial, mitigating the prejudice otherwise accruing from the prosecution's improper comments. Moreover, the record does not permit a determination that defendant was compelled to testify as a result of the insinuations arising from the prosecution's comments. While we cannot determine that the prosecution's remarks were an attempt to circumvent the rule of Griffin, we are troubled by the considerable amount of time the prosecution devoted to an inquiry about defendant's right not to testify and to the feelings of potential jurors should they not hear both sides of the story. Nonetheless, because plain error is not evident on this record, defendant's second assignment of error is overruled.
Having overruled both of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
PETREE and PAINTER, JJ., concur.
PAINTER, J., of the First Appellate District, assigned under authority of Section 6(C), Article IV, Ohio Constitution.