JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, David A. Mapes ("Mapes"), appeals his conviction and death sentence. This new direct appeal is before this court from the Sixth Circuit Court of Appeals' granting of Mapes' habeas corpus petition. Finding some merit to the appeal, we affirm his conviction but vacate his sentence and remand the matter for resentencing.
 {¶ 2} In 1983, Mapes was charged with aggravated murder with specifications, aggravated robbery, and aggravated burglary. As set forth by the Ohio Supreme Court in State v. Mapes (1985),19 Ohio St.3d 108, 484 N.E.2d 140, the following evidence and procedural history was adduced at trial:
"On January 30, 1983 at approximately 7:50 a.m., appellant, David Mapes, and Rodney Newton entered Chap's Bar located on Prospect Avenue in Cleveland, Ohio. The bar was closed, but one of its owners, John Allen, and four employees were present. Allen, Ronald Rucci and Michael Williams were seated at the bar. John Hovekamp and David Yun were off to the side in a section of the bar known as the `pit area,' asleep. A sixth man, Frank Kuhn, was upstairs in the building.
Mapes and Newton gained entrance through the rear of the building and, upon encountering the three men at the bar, Mapes aimed a sawed-off shotgun he was carrying at Rucci's head and instructed all three to put their hands on the bar. Allen began to make some gesture with his hands and Mapes shot him in the face. Allen fell to the floor, mortally wounded. At the sound of the shot, Rucci dove to the floor. Mapes ordered Williams to lie on the floor and then searched the men on the floor, including Allen, for money. Newton went first behind the bar to the cash register, and then proceeded to the video machines. While en route to the video machines, Newton spotted Yun and Hovekamp in the `pit area' and notified Mapes of their presence. Mapes ordered Rucci and Williams to crawl to the `pit area' and stood guard over the four there while Newton broke into the video games with a crowbar.
Mapes and Newton next proceeded to the back of the building where the safe was located and the liquor was stored. The two were not able to open the safe as Allen had been the only one present who knew the combination. The four men then heard a door slam and, after determining it was safe, called the police. Allen was dead when the police arrived at 8:10 a.m. The police found no one at the scene but found a broken window by the parking lot of the Town House Apartments and a garage door held open by a wooden block.
Michael Reese, upon hearing the news accounts of the murder and robbery, notified a Cleveland detective that Mapes had approached him and had attempted to recruit him for the robbery of Chap's Bar. Reese gave the police a formal written statement to this effect on February 5, 1983. On February 6, the police showed a photo array to John Hovekamp. He selected photos of three individuals whom he thought resembled the gunman. This group included a photo of appellant. On the next day, a warrant for appellant's arrest and a warrant to search his apartment were obtained. This search, conducted on February 8, 1983, revealed, among other things, a crowbar. Appellant was arrested and, when questioned, he told the police that he had merely prepared an entrance to the bar, but that Newton and a man named Red had committed the robbery. On February 11, 1983, a lineup was held at which Hovekamp positively identified appellant as the man carrying the shotgun within the premises where the robbery and murder occurred.
Newton was arrested on March 4, 1983 in Akron and was interviewed by Cleveland police on March 7. He gave a full written statement to police recounting the events at the bar consistent with the accounts of the bar employees and the police investigation. This written statement was introduced at trial and Newton testified at trial. Newton also indicated that appellant had returned to his own apartment and dropped unused shells down a drainpipe and arranged to dispose of the gun. After obtaining a warrant, the police found a shell in the hole indicated by Newton. The shell was the same type that was used to kill Allen.
Rucci positively identified appellant during trial as the man who shot Allen with the sawed-off shotgun. Hayward Chambers testified at trial that appellant had admitted to him that he had robbed Chaps and killed Allen. Appellant's wife and a neighbor, Christine Alexander, both testified that appellant owned a sawed-off shotgun.
Appellant was indicted for two counts of aggravated murder under R.C. 2903.01(B). One count charged that the murder occurred during the course of an aggravated robbery. The other count charged that the murder occurred during the course of an aggravated burglary. Each of these counts had four identical specifications as follows: Under R.C. 2929.04(A)(7), one death-penalty specification alleging the offense occurred in the course of an aggravated robbery; under R.C. 2929.04(A)(7), one death-penalty specification alleging the offense occurred in the course of an aggravated burglary; under R.C. 2929.04(A)(5), one death-penalty specification alleging a prior murder conviction; and, under R.C. 2941.141, one firearm specification. In addition to the death-penalty charges, Counts Three, Four and Five each charged aggravated robbery under R.C. 2911.01, and Count Six charged aggravated burglary under R.C. 2911.11.
The jury returned a verdict finding appellant guilty of both counts of aggravated murder under R.C. 2903.01(B), but not guilty of the death-penalty specifications charged under R.C.2929.04(A)(7). Appellant was found guilty of the firearm specification as well as Counts Four, Five and Six. Appellant was found not guilty of Count Three.
The issue of whether appellant was guilty of the prior murder specification under R.C. 2929.04(A)(5) was tried separately to the court. The court received into evidence an indictment from Passaic County, New Jersey, charging appellant with murder. Also received was a judgment of conviction entered upon appellant's plea of non vult. The court found appellant guilty of the prior murder specification under R.C. 2929.04(A)(5).
At the sentencing phase of trial, appellant made a statement on his own behalf, but presented no other witnesses. The jury returned a recommendation that the death penalty be imposed. The trial court sentenced appellant to death on the two counts of aggravated murder and to terms of imprisonment on Counts Four, Five and Six, to run consecutively." Id. at 108-110.
 {¶ 3} This court affirmed his conviction and death sentence in State v. Mapes (Oct. 25, 1984), Cuyahoga App. No. 47191. The Ohio Supreme Court also affirmed Mapes' conviction and death sentence in State v. Mapes (1985), 19 Ohio St.3d 108,484 N.E.2d 140.
 {¶ 4} Mapes filed a petition for postconviction relief, which was denied by the trial court. We affirmed the trial court's decision in State v. Mapes (Mar. 8, 1990), Cuyahoga App. No. 56608, and the Ohio Supreme Court declined jurisdiction and dismissed his appeal. State v. Mapes (1990), 53 Ohio St.3d 703,558 N.E.2d 57.
 {¶ 5} Mapes subsequently filed a habeas corpus petition in the United States District Court for the Northern District of Ohio. The petition was referred to a magistrate, who recommended relief on the ground of ineffective assistance of appellate counsel. The district court agreed.
 {¶ 6} Warden Ralph Coyle appealed this judgment, and Mapes cross-appealed. The Sixth Circuit Court of Appeals affirmed the district court in part, reversed in part, and remanded the case for an evidentiary hearing to determine whether there was a reasoned tactical judgment by state court appellate counsel to omit meritorious issues from the direct appeal. Mapes v. Coyle
(6th Cir. 1999), 171 F.3d 408 ("Mapes I").
 {¶ 7} On remand, the district court magistrate judge found no tactical justification for the omissions and, therefore, recommended relief. The district court adopted the magistrate's report and recommendation and issued the writ of habeas corpus ordering Mapes' release within ninety days unless the State afforded him a new direct appeal. Warden Arthur Tate again appealed this decision to the Sixth Circuit Court of Appeals and Mapes cross-appealed on the remedy issue only. The Sixth Circuit affirmed the district court's finding that Mapes was denied effective assistance of appellate counsel and the court's order that he receive a new direct appeal. Mapes v. Tate (6th Cir. 2004), 388 F.3d 187 ("Mapes II").
 {¶ 8} In his new direct appeal, Mapes presents eight assignments of error, which are set forth in the attached Appendix. These errors will be addressed together and out of order where appropriate.
 {¶ 9} As a preliminary matter, the parties disagree on which issues Mapes may raise in this direct appeal. The State contends that Mapes is barred by res judicata in his attempt to relitigate any issue that was previously raised in his first appeal or in his postconviction relief petition; specifically, the issue of effective assistance of trial counsel during the guilt phase of trial. To the contrary, Mapes argues that he is entitled to a new direct appeal "in its entirety" because he was denied effective assistance of appellate counsel. We agree with Mapes.
 {¶ 10} The granting of a new direct appeal allows a defendant to raise any issues on appeal that he could have raised in his first direct appeal with the effective assistance of appellate counsel. These issues could include those previously decided by this court and the Ohio Supreme Court or any new issues not previously raised. Moreover, the Sixth Circuit did not expressly restrict the scope of the new appeal, thus, this court will not limit its review.
 {¶ 11} Therefore, we will address all issues raised by Mapes in the instant appeal.
 Penalty Phase Errors {¶ 12} Mapes' first, second, third, and seventh assignments of error challenge alleged violations that occurred during the penalty phase of trial. Mapes argues in his first assignment of error that the trial court erred and substantially prejudiced him when it answered a jury question with an instruction advising the jury that the mitigating factors do not apply to the aggravating circumstance.
 {¶ 13} The Sixth Circuit Court of Appeals, in determining that Mapes was denied effective assistance of appellate counsel, found:
"[W]hen Mapes attempted to introduce mitigating evidence that he was not the triggerman in the New Jersey murder, the trial judge instructed the jury that it was not allowed to consider any mitigating evidence related to the prior murder conviction. This instruction was contrary to the Supreme Court's ruling inEddings v. Oklahoma (1982) 455 U.S. 104, 71 L. Ed. 2d 1,102 S. Ct. 869." Mapes II, supra at 191-192.
 {¶ 14} The court held that this instruction by the trial court was "erroneous" and constituted "reversible error." Id. at 192.
 {¶ 15} We follow the Sixth Circuit's analysis and find that the trial court committed reversible error by preventing the jury from considering mitigating evidence concerning Mapes' prior conviction for a New Jersey murder.
 {¶ 16} The United States Supreme Court, the Ohio Supreme Court and this court have repeatedly held that pursuant to theEighth and Fourteenth Amendments, the "sentencer" is entitled to consider any mitigating evidence of "any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Eddings, supra at 110, quoting Lockett v.Ohio (1978), 438 U.S. 586, 604, 57 L. Ed. 2d 973,98 S. Ct. 2954; Skipper v. South Carolina (1986), 476 U.S. 1,106 S. Ct. 1669, 90 L. Ed. 2d 1; and Hitchcock v. Dugger (1987),481 U.S. 393, 107 S. Ct. 1821, 95 L. Ed. 2d 347. See, also, State v.Davis (1992), 63 Ohio St.3d 44, 584 N.E.2d 1192; State v.Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338.
 {¶ 17} In the instant case, the court limited the jury from considering any mitigating evidence related to Mapes' prior murder conviction. The instruction to the jury was as follows:
"I have at least three times explained this to you. You are required to accept without reservation the fact that the defendant was convicted in 1972 of murder. And an essential element of which was the purposeful killing of another. The mitigating factors do not apply to the prior murder conviction at all."
 {¶ 18} In Dixon, supra, this court recognized that a defendant is given "great latitude" in the presentation of mitigating evidence during the penalty phase of a capital proceeding. Id.; R.C. 2929.03(D). Furthermore, the trial court advised Mapes prior to the penalty phase that "the law allows you great latitude in the presentation of [mitigating] evidence." (Tr. 3819, 3822). Therefore, we find that the trial court erred and abused its discretion by improperly limiting the jury from considering mitigating evidence concerning the New Jersey murder. The State concedes that this assignment of error has merit and that Mapes is entitled to a new sentencing hearing. Accordingly, Mapes' sentence is vacated and the case is remanded for resentencing pursuant to and consistent with R.C. 2929.06.
 {¶ 19} Because we find merit in the first assignment of error, the second, third, and seventh assignments of error, which also allege errors during the penalty phase, are moot.
 Aggravating Circumstance — Firearm Specification {¶ 20} In his fourth assignment of error, Mapes argues that the trial court erred and substantially prejudiced him when the court 1) instructed the jury that the firearm specification was an aggravating circumstance; 2) submitted a verdict form to the jury consistent with this instruction; and 3) failed to clearly and unequivocally correct the error prior to the penalty phase deliberations.
 {¶ 21} Because of our previous conclusion that Mapes is entitled to a new sentencing hearing, we need not address any other issues relating to the sentencing phase of the trial.
 {¶ 22} Trial counsel failed to object to this instruction; thus, Mapes has waived all but plain error. Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The standard for noticing plain error is set forth in State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240:
"By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Citations omitted.)
 {¶ 23} An error that satisfies these three requirements may be corrected by the appellate court. However, notice of plain error should be done "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, 97,372 N.E.2d 804.
 {¶ 24} The gun specification listed in the indictment is not an aggravating circumstance pursuant to R.C. 2929.04(A). It is reversible error to submit a non-statutory aggravating factor to the jury for its consideration during the penalty phase. Statev. Johnson (1986), 24 Ohio St.3d 87, 92-94, 494 N.E.2d 1061, overruled on other grounds. However, Mapes argues that it was also error to classify the firearm specification as an aggravating circumstance during the guilt phase of the trial.
 {¶ 25} Although the trial court incorrectly instructed the jury during the guilt phase that the gun specification was an "aggravating circumstance," the characterization is irrelevant at that stage of the trial. In order to find a defendant guilty of a firearm specification, the jury must find that he had a firearm on or about his person or under his control while committing the offense charged. R.C. 2941.141. We cannot say that this alleged error affected the outcome of the trial.
 {¶ 26} Mapes claims that this incorrect classification during the guilt phase tainted the jury during the penalty phase. As previously stated, we need not consider any issues raised under this assignment of error pertaining to the penalty phase. Moreover, Mapes fails to demonstrate how this classification so prejudiced him that he was denied a fair trial during the guilt phase.
 {¶ 27} Accordingly, Mapes' fourth assignment of error, as it pertains to the guilt phase of trial, is overruled. Any issue raised concerning the penalty phase is moot.
 Ineffective Assistance of Counsel {¶ 28} In his fifth and eighth assignments of error, Mapes argues that his trial counsel was ineffective during the guilt and penalty phases of trial. Because we are vacating Mapes' sentence and remanding for a new sentencing hearing, we need not discuss any claims of ineffective assistance of trial counsel during the sentencing phase because such claims are moot. We will address only those arguments pertaining to the guilt phase of trial.
 {¶ 29} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard or reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing Strickland v. Washington
(1984), 466 U.S. 668, 687-688, 80 L. Ed. 2d 674, 104 S. Ct. 2052.
 {¶ 30} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v.Hester (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." Statev. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 57 L. Ed. 2d 1154,98 S. Ct. 3135; State v. Calhoun, 86 Ohio St.3d 279, 289, 1999-Ohio-102,714 N.E.2d 905.
 {¶ 31} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus;Strickland, supra at 686.
 {¶ 32} Mapes argues that his trial counsel was ineffective by failing to adequately investigate the factual history of the crime prior to trial. After reviewing the record and the parts of the transcript Mapes cites, we find nothing in the record to suggest that trial counsel was deficient or that his actions fell below an objective standard of reasonableness. A majority of the selected comments cited by Mapes were paraphrased remarks made by the prosecutor about defense counsel which, at most, can be viewed as trial tactics to persuade the court to rule in the State's favor. Additionally, Mapes fails to demonstrate what a "competent investigation" would have revealed or how he was prejudiced by this alleged lack of investigation.
 {¶ 33} Mapes also claims that his trial counsel was ineffective for failing to raise and preserve any substantive issues by pretrial motions in a death penalty case and by incompetently handling the few motions he filed or made orally. A review of the record does not reveal any instances where counsel's performance fell below an objective standard of reasonableness. Again, Mapes has failed to demonstrate any prejudice caused by these alleged errors. The right to counsel is the right to the effective assistance of counsel. "It does not guarantee the accused the right to errorproof counsel and `hindsight should play little role in measuring ineffectiveness.'" State v. Sneed (1992), 63 Ohio St.3d 3, 16,584 N.E.2d 1160, quoting Stano v. Dugger (11th Cir., 1989),883 F.2d 900, 912.
 {¶ 34} Mapes further argues that his counsel was also ineffective during the jury selection process. The record reveals that these allegations of ineffectiveness are all speculative and require a hindsight analysis. Mapes makes allegations that, even to him, are "difficult to determine." He cites various portions of the jury voir dire in which the jury was "confused." However, most of those instances involved the court or the prosecutor, not trial counsel, confusing the jury.
 {¶ 35} Mapes' final contention is that counsel was ineffective throughout the entire guilt phase of the trial. The instances he cites reveal a zealous and passionate advocate, not ineffective counsel. Mapes also argues that his counsel was ineffective for failing to request instructions on lesser included offenses. Failure to request instructions on lesser included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. State v. Clayton
(1980), 62 Ohio St.2d 45, 402 N.E.2d 1189, certiorari denied (1980), 449 U.S. 879, 101 S. Ct. 227, 66 L. Ed. 2d 102.
 {¶ 36} Moreover, the arguments regarding trial counsel's performance during the guilt phase of the trial are not persuasive because the evidence of Mapes' guilt was overwhelming. Thus, even if counsel was not reasonably effective, no prejudice can be established demonstrating that the verdict would have been different but for trial counsel's allegedly deficient performance.
"Mapes admitted to taking part in the robbery, he was identified by eyewitnesses as the person who shot Allen, and corroborating evidence was admitted indicating he was the shooter. Therefore, no reasonable probability exists that different actions or a different strategy by trial counsel could have avoided a guilty verdict." Mapes I, supra at 425. See, also, Mapes II, supra at 192.
 {¶ 37} Mapes argues in his final assignment of error that the cumulative effect of the errors committed by trial counsel deprived him of the effective assistance of counsel. Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error. State v. Garner,74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623, certiorari denied (1996), 517 U.S. 1147, 134 L. Ed. 2d 564, 116 S. Ct. 1444;State v. DeMarco (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus. Because we have not found any instances of error in this case, the doctrine of cumulative error is inapplicable.
 {¶ 38} Accordingly, we find no merit to the fifth and eighth assignments of error.
 Death Penalty Eligibility {¶ 39} In his sixth assignment of error, Mapes argues that the trial court erred when it 1) found that he was eligible to receive the death penalty; 2) proceeded to a mitigation hearing; 3) accepted the sentencing jury's verdict; and 4) sentenced him to death after the jury returned verdicts finding him to have been neither the triggerman in the shooting, nor an aider and abettor acting with prior calculation and design. We will limit our review of this assignment of error to whether the trial court erred in concluding that Mapes was eligible to receive the death penalty because all other issues pertain to the sentencing phase of the trial, which we have already determined was contrary to law.
 {¶ 40} In Ohio, to be eligible for the death penalty, a defendant must be found guilty of aggravated murder and at least one death specification. R.C. 2929.04(A). Thus, a defendant who "prior to the offense at bar * * * was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another * * *" may be sentenced to death if both judge and jury find that the death-specification circumstance outweighs any mitigating circumstance. R.C. 2929.04(A)(5).
 {¶ 41} In the instant case, Mapes was convicted of two counts of aggravated felony murder. The trial court also found Mapes guilty on the third specification, which involved a prior murder conviction. Therefore, pursuant to R.C. 2929.04(A), Mapes was eligible for the death penalty.
 {¶ 42} Nevertheless, Mapes argues that he was not eligible to receive the death penalty because he was acquitted on specifications one and two, i.e. being the triggerman. Mapes claims that the "underlying factual determination necessarily implied by the verdicts" renders his death penalty eligibility problematic. We disagree.
 {¶ 43} As previously explained and rejected by the Ohio Supreme Court, Mapes' arguments have no merit. State v. Mapes
(1985), 19 Ohio St.3d 108; Mapes I. As the Ohio Supreme Court stated:
"Additionally we note that a close reading of the language in the principal charge and the two specifications reveals that there is not necessarily an inconsistency in the guilty verdict of aggravated murder under R.C. 2903.01(B) and the jury's finding of not guilty on the two specifications. An individual can be convicted of aggravated felony murder as an accomplice absent a finding that either the individual was the `principal offender' or that he committed the murder with `prior calculation and design' as those terms were used in the first two specifications. Thus, a person would be guilty of murder but would not be guilty of the aggravating specification set out in R.C. 2929.04(A)(7). Therefore, appellant's argument that there is an inherent inconsistency in the results reached by the jury must be rejected. We would also point out that this issue is also resolved by our decision in State v. Perryman (1976),49 Ohio St. 2d 14 [3 O.O.3d 8], vacated on other grounds (1978),438 U.S. 911.
State v. Perryman presents precisely the situation in the instant case. In Perryman, the jury found the accused guilty of aggravated murder and aggravated robbery, but found the accused not guilty of a specification involving aggravated robbery. The court held in paragraph three of the syllabus that:
`Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid.'
In explaining its result, the court in Perryman stated at 26:
` * * * The sentence was not based on an alleged inconsistency. The guilty verdict for count one reflects the jury's determination that appellant was guilty of the felony-murder. The determinations rendered as to the respective specifications cannot change that finding of guilty. Furthermore, as indicated in R.C. 2929.03(A), one may be convicted of aggravated murder, the principal charge, without a specification. Thus, the conviction of aggravated murder is not dependent upon findings for the specifications thereto. Specifications are considered after, and in addition to, the finding of guilt on the principal charge. If more than one specification is charged, a finding of guilty on only one such specification is all that is required in order for the court to render the death sentence.'"
State v. Mapes (1985), 19 Ohio St.3d 108, 113,484 N.E.2d 140.
"All the verdicts demonstrate is that the jury found Mapes guilty of aggravated murder, including the element that he possessed the intent to kill, and that it found him not guilty of two specifications that would have supported the death penalty under Ohio law. The aggravated murder conviction does not require guilty verdicts on the specifications[.] * * * Powell teaches that the inconsistent verdicts are viewed completely separately, and that no conclusion may be drawn from comparing the two."Mapes I, supra at 420.
 {¶ 44} Moreover, regardless of the jury's decision on specifications one and two, Mapes was eligible to receive the death penalty because he was convicted of specification three, the prior murder conviction. See, Mapes I, supra at 412, 424-425; State v. Mapes (1985), 19 Ohio St.3d 108, 112,484 N.E.2d 140. Therefore, the court did not err in proceeding to the mitigation phase of the trial.
 {¶ 45} The sixth assignment of error is overruled.
 {¶ 46} Conviction affirmed. Sentence vacated, and case remanded for resentencing.
The sentence is vacated, and this cause is remanded for resentencing.
It is ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate issue from this court to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J. and Kilbane, J. Concur
 APPENDIX FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT WHEN IT ANSWERED THE JURY QUESTION WITH AN INSTRUCTION ADVISING THE JURY THAT THE MITIGATING FACTORS DO NOT APPLY TO THE AGGRAVATING CIRCUMSTANCE.
 SECOND ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT WHEN IT ACCEPTED A JURY VERDICT OF [DEATH] FROM A JURY THAT WAS NOT UNANIMOUS IN VERDICT.
 THIRD ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT WHEN IT INSTRUCTED THE JURY THAT THEY MUST ACQUIT THE DEFENDANT ON THE GREATER SENTENCE BEFORE BEGINNING DELIBERATION ON THE LESSER.
 FOURTH ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED TO DEFENDANT'S SUBSTANTIAL PREJUDICE BY INSTRUCTING THE JURY THAT THE GUN SPECIFICATION WAS AN AGGRAVATING CIRCUMSTANCE, BY SUBMITTING A VERDICT FORM TO THE JURY CONSISTENT WITH THIS INSTRUCTION, AND BY FAILING TO CLEARLY AND UNEQUIVOCALLY CORRECT THE ERROR PRIOR TO PENALTY PHASE DELIBERATIONS.
 FIFTH ASSIGNMENT OF ERROR
THE DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED BY THE UNPROFESSIONAL REPRESENTATION PROVIDED BY TRIAL COUNSEL, AND THE DEFENDANT WAS SUBSTANTIALLY PREJUDICED AS A RESULT.
 SIXTH ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED TO DEFENDANT'S SUBSTANTIAL PREJUDICE WHEN IT FOUND THAT THE DEFENDANT WAS DEATH ELIGIBLE, PROCEEDED TO A MITIGATION HEARING, ACCEPTED THE SENTENCING JURY'S VERDICT AND SENTENCED DEFENDANT TO DEATH AFTER THE JURY RETURNED VERDICTS FINDING HIM TO HAVE BEEN NEITHER THE TRIGGER MAN IN THE SHOOTING, NOR AN AIDER AND ABETTOR ACTING WITH PRIOR CALCULATION AND DESIGN.
 SEVENTH ASSIGNMENT OF ERROR
THE DEFENDANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED, AND THE DEFENDANT WAS PREJUDICED AS A RESULT OF THE VIOLATIONS WHERE THE PROSECUTORS WERE IN POSSESSION OF MATERIAL EXCULPATORY EVIDENCE DURING THE MITIGATION PHASE OF THE TRIAL, FAILED TO DISCLOSE THE EVIDENCE TO DEFENSE COUNSEL, PRESENTED THE TESTIMONY OF A JAILHOUSE INFORMANT THAT THEY KNEW OR HAD REASON TO KNOW WAS FALSE, AND PREVENTED DEFENSE COUNSEL'S CROSS-EXAMINATION OF THE INFORMANT TO THE EFFECT THAT ELLIOT HAMPTON WAS AND DAVID MAPES WAS NOT THE SHOOTER IN THE PATTERSON, NEW JERSEY HOMICIDE.
 EIGHTH ASSIGNMENT OF ERROR
APPELLANT WAS DENIED HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BECAUSE THE CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS AND OMISSIONS DEPRIVED APPELLANT OF THE EFFECTIVE ASSISTANCE OF COUNSEL, A FAIR TRIAL AND A FAIR SENTENCING.
COURT OF APPEALS OF OHIO, EIGHTH DISTRICT
COUNTY OF CUYAHOGA
NO. 86225
STATE OF OHIO : : SUPPLEMENTAL Plaintiff-Appellee : JOURNAL ENTRY : and : APPELLATE REVIEW : of DAVID A. MAPES : DEATH SENTENCE :
Defendant-Appellant:
DATE OF ANNOUNCEMENT OF DECISION: January 26, 2006
CHARACTER OF PROCEEDING: Civil appeal from Common Pleas Court Case No. CR-181703
JUDGMENT: CONVICTION AFFIRMED; CASE REMANDED FOR RESENTENCING
DATE OF JOURNALIZATION: _______________________
APPEARANCES:
For Plaintiff-Appellee: WILLIAM D. MASON Cuyahoga County Prosecutor JON W. OEBKER, Assistant
 1200 Ontario Street, 9th Floor Cleveland, Ohio 44113
For Defendant-Appellant: HARRY R. REINHART Reinhart Law Office 400 South Fifth Street, #202 Columbus, Ohio 43215-5430
 CAROL WRIGHT 318 Berger Alley Columbus, Ohio 43206
COLLEEN CONWAY COONEY, P.J.:
 {¶ 47} Pursuant to the requirements set forth in R.C.2929.05(A), this court certifies that it has reviewed the judgment, the sentence of death, and all of the evidence contained in the record and enters the following independent findings:
1. The offenses and aggravating circumstances which the defendant was found guilty of committing were proven beyond a reasonable doubt;
2. During the penalty phase of the capital proceeding, reversible error occurred in the exclusion of relevant mitigation evidence by the trial court;
3. Under the circumstances, a determination as to the weight of the aggravating circumstances compared to mitigating factors, the proportionality of the sentence, and whether the sentencing court properly weighed the aggravating circumstances and mitigating factors as required by R.C. 2929.05 is unnecessary in light of this court's order remanding the case for resentencing.
ANTHONY O. CALABRESE, JR., J. and MARY EILEEN KILBANE, J.CONCUR